# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FEDERAL DEPOSIT INSURANCE CORP.** | CASE NO. SACV 10-00710 DOC (RNBx) |
| Plaintiff(s), | |
| v. | **O R D E R GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |
| **QUEST, F.S., INC. et al.,** | |
| Defendant(s). | |

Before the Court is a Motion for Default Judgment filed by Plaintiff, the Federal Deposit Insurance Corporation, in the above-captioned case ("Motion for Default Judgment") (Docket 61). After considering the moving papers[1] and oral argument, the Court GRANTS in part and DENIES in part the Motion for Default Judgment.

---

[1] Plaintiff's initial memorandum in support of the Motion for Default Judgment did not address several crucial issues. As a result, on May 27, 2011, the Court ordered Plaintiff to submit supplemental briefing (Docket 79). Plaintiff submitted its supplemental brief on June 13, 2011 (Docket 82). Plaintiff's supplemental brief has been considered by the Court.

## I. BACKGROUND

The Federal Deposit Insurance Corporation ("Plaintiff"), as Receiver for Downey Savings & Loan ("Downey"), seeks default judgment on its claim for breach of contract against Defendants Quest Financial Services, Incorporated ("Quest"); Jesse Dichoso ("Dichoso"); and Omar Anabo ("Anabo").[2] Dichoso and Anabo are alleged to have functioned as the alter egos of Defendant Quest, on the grounds that Dichoso and Anabo constituted Quest's sole shareholders and improperly commingled their own funds with those of Quest. Plaintiff further requests default judgment on claims of professional negligence against Quest, Dichose and Anabo and on claims of negligent misrepresentation and fraud against Quest, Dichoso, Anabo, Capital Access, LLC ("Capital Access") and Zalathiel Aguia ("Aguia").

Plaintiff's claims arise from a series of alleged events relating to six separate loans executed by Downey: the Anway loan, the Maharaj loan, the Serrano loan, the Torres loan, the Sutor loan, and the Valle loan. Plaintiff makes three allegations for each of the six loans. First, Plaintiffs claim that borrowers intentionally misrepresented various information in their loan applications. Specifically, Plaintiff contends that all borrowers overstated their income and that certain borrowers misstated employment information and understated debts. Second, Plaintiff alleges that Quest failed to properly perform a reasonable investigation into the accuracy of the loan applications upon which Plaintiff relied in approving the loans, which was a breach of its Brokerage Agreement and its duties of professional care. Third, Plaintiff alleges that borrowers were in fact straw borrowers paid in exchange for the use of their credit information, and that the real borrower in most if not all of the loans was Quest acting through its affiliate Capital Access.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides that the Court may, in its discretion, order default judgment following the entry of default by the Clerk. Fed. R. Civ. P. 55(b). "The general

---

[2]Plaintiff also initially requested default judgment against Jean Serrano ("Serrano"), an individual who obtained loans from Quest, for breach of contract. In their most recent submissions in support of their Motion for Default Judgment, however, Plaintiff appears to have abandoned its claims against Serrano.

2

rule of law is that upon default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam). However, "necessary facts not contained in the pleading, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.,* 980 F.2d 1261, 1267 (9th Cir. 1992). Where the pleadings are insufficient, the Court may require the moving party to produce evidence in support of the motion for default judgment. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Ultimately, "[t]he district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that may be considered by the Court in exercising its discretion to enter default judgment include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect[,] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

### III. DISCUSSION

#### A. Procedural Requirements

The Court begins by determining whether Plaintiff has complied with the applicable procedural requirements. The Court finds that Plaintiffs have fulfilled their obligations under Fed. R. Civ. P. 55(a) and Local Rules 55-1 and 55-2 with respect to the entry of default judgment. Specifically, Plaintiffs have identified the Defendants against whom the default is sought and have established that the clerk of the court entered a default against them (Dockets 30, 46, 60). Plaintiffs have attested that none of the Defendants are infants or incompetent persons and that no Defendants are in active military service. Decl. of J. Wilcox (Dockets 29, 33, 59). Finally, Plaintiffs have provided proof that Defendants were served with the Notice of Motion for Default Judgment. Having determined Plaintiff's procedural compliance, the Court turns to the substance of Plaintiff's Motion.

**B.     The Propriety of Default Judgment**

In deciding whether to exercise their discretion to impose judgment by default, courts look to following factors for guidance:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."

*Eitel*, 782 F.2d at 1471-72.  The Court considers these factors in turn.

**1.     Possibility of Prejudice to Plaintiffs**

The first *Eitel* factor – the possibility of prejudice to the Plainitffs – supports the issuance of a default judgment. Without a judgment for damages, plaintiffs would be unable to collect the amount owed to them. *See PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). The risk of harm posed by such a scenario is obvious and militates in favor of granting Plaintiff's motion.

**2.     Sufficiency of the Complaint / Merits of Plaintiffs' Substantive Claims**

The second and third *Eitel* factors concern the merits of Plaintiff's case and the sufficiency of Plaintiff's complaint.  Courts commonly analyze these two factors together. *Pepsico, Inc. v. California Security Cans.*, 238 F. Supp. 2d 1172, 1175-76 (C.D. Cal. 2002). The instant Court follows suit.

**a.     *Breach of Contract***

The second and third *Eitel* factors support the entrance of default judgment on Plaintiff's breach of contract claim against Quest, Dichoso, and Anabo.  The elements of a cause of action for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for non-

performance, (3) defendant's breach and (4) damage to the Plaintiff therefrom. *Wall Street Network, Ltd v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008). Here, the Complaint contains sufficient allegations as to the existence of the Wholesale Brokerage Agreement, the contract between Downey and Quest, which is attached as Exhibit 1 to the Complaint.[3] Plaintiff also sufficiently pleads Downey's performance under the Wholesale Broker Agreement, as well as breach by Quest and resulting damages therefrom. Compl., ¶¶ 70, 71-74. Specifically, Plaintiff avers that Quest breached its contractual obligations by (i) failing to conduct a reasonable investigation into the financial information set forth in the relevant loan applications and (ii) by relying on appraisals that did not comply with the proper standards. By failing to respond to Plaintiff's complaint, Defendants are deemed to have admitted these allegations. *Geddes,* 559 F.2d at 560. In addition, Plaintiff has supplemented its allegations with declarations and exhibits in support of the instant Motion for Default Judgment. *See* Decl. of T. Hante. The second and third *Eitel* factors thus weigh in favor of issuing default judgment on Plaintiff's breach of contract claims against Quest, Dichoso, and Anabo.

### b. *Professional Negligence*

Plaintiff next requests default judgment on its claim for professional negligence. The elements of this claim consist of (1) the existence of a professional duty to use such skill, prudence, and diligence as other members of the professional commonly possess and exercise, (2) breach of that duty, (3) a proximate causal connection between the negligent conduct and the resulting injury, and (4) actual loss or damage resulting from the professional's negligence. *Budd v. Nixen*, 6 Cal. 3d 195, 200 (1971). Plaintiff's Complaint alleges that Quest, Dichoso and Anabo were licensed real estate professionals who owed a duty of care in submitting loan applications and conducting appraisals, Compl., ¶¶ 90-91. The Complaint goes on to allege that Defendants breached their duties by "submitting to Downey false, inaccurate, incomplete and/or

---

[3]Because Plaintiff sufficiently pleads Dichoso and Anabo's status as Downey's alter egos, Dichoso and Anabo can be held liable for Downey's breaches. Compl., ¶¶ 7-9.

5

misleading information in the Borrowers' respective loan applications and the appraisals for [various properties]." *Id.*, ¶ 91. The Complaint further avers that these breaches proximately caused Downey to suffer specific economic loss. *Id.*, ¶ 96. Once again, Plaintiff's evidence submitted in support of the Motion for Default Judgment buttresses these allegations. Evaluation of the second and third *Eitel* factors direct the Court to enter default judgment on Plaintiff's breach of professional duty claims.

### c. *Negligent Misrepresentation and Fraud*

By contrast, application of the second and third *Eitel* factors to Plaintiff's claims for negligent misrepresentation and fraud militate against the issuance of default judgment. The elements of a cause of action for negligent misrepresentation consist of: (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages. *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986). The elements of a cause of action for fraud are similar, consisting of: (1) misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damage. *Engalla v. Permanent Medical Group, Inc.*, 15 Cal. 4th 951, 974 (1997). Claims for negligent misrepresentation and fraud are subject to the heightened pleading standards set forth in Fed. R. Civ. P. 9(b). Rule 9(b) demands that a party asserting a claim for fraud "state with particularity the circumstances constituting fraud or mistake." Accordingly, "[t]he complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). In addition, the "plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (*quoting In re Glenfed Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). Plaintiff's allegations in support of its claims for fraud and negligent misrepresentation do not contain sufficient factual detail to satisfy this standard.

The only causes of action asserted against Defendants Capital Access, LLC and Aguia are

those for negligent misrepresentation and fraud. Accordingly, default judgment will not be entered against these defendants.

### 4. The Sum of Money at Stake

The fourth *Eitel* factor considers the amount of money at issue in the action. Here, Plaintiff alleges that it lost approximately $1.6 million in principal as a result of Defendants' breaches. Plaintiff further requests prejudgment interest of $428,894.84. The high value of the controversy counsels the Court to proceed with caution in exercising its discretion to grant default judgment. However, in light of the significant evidence of wrongdoing that Plaintiff presents, the significance of the amount in controversy does not militate against granting default judgment on Plaintiff's breach of contract and breach of professional negligence claims.

### 5. The Possibility of a Dispute Concerning Material Facts

With respect to the fifth factor, in light of Defendants' wholesale failure to respond to Plaintiffs' complaint, the likelihood of a dispute concerning material facts developing appears to be minimal. In any event, Plaintiffs have provided substantial evidence in support of their allegations, indicating that a true dispute on the facts would have been unlikely even if Defendants had chosen to contest Plaintiffs' claims. This factor weighs in favor of default judgment.

### 6. Whether Default Was Due to Excusable Neglect

No evidence exists to suggest that Defendants' failure to respond resulted from excusable neglect. This sixth *Eitel* factor thus supports the issuance of default judgment.

### 7. Public Policy Favoring Decisions on the Merits

The final *Eitel* factor asks the Court to consider the strong public policy interest in favor of determining cases on the merits. As always, evaluation of this factor militates against default judgment. However, this general policy interest, standing alone, is not enough to tip the balance in favor of denying Plaintiffs' Motion. Default judgment remains appropriate.

**D. Damages**

Plaintiff seeks a total award of $1,692,982.00 in principal plus prejudgment interest of $428,894.84. Cal. Civ. Code § 3300 provides that "[f]or the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." In addition, breach of contract damages must be "clearly ascertainable in both their nature and origin." Cal. Civ. Code § 3301. Plaintiff has plausibly alleged that Downey would not have entered into the Anway loan, the Maharaj loan, the Serrano loan, the Torres loan, the Sutor loan, or the Valle loan had Quest fulfilled its obligations under the Brokerage Agreement. Accordingly, Plaintiff is entitled to damages equal to the amount of money that Downey lost as a result of these loans. The Declaration of Tony Hante, as well as the exhibits attached thereto establish the following net losses as a result of each loan:

|         | Total Debt at Foreclosure | Downey's Credit Bid | Total Net Loss to Downey |
|---------|---------------------------|---------------------|--------------------------|
| Anway   | $554,734                  | $120,000            | $434,000                 |
| Maharaj | $433,994                  | $107,250            | $326,000                 |
| Serrano | $307,467                  | $187,500            | $117,000                 |
| Sutor   | $597,232                  | $281,250            | $315,982                 |
| Torres  | $646,776                  | $352,500            | $294,000                 |
| Valle   | $528,509                  | $322,500            | $206,000                 |

Total Loss: $1,692,982

Decl. Of T. Hante, Exhs. 8, 14, 20, 26, 32, 38. Plaintiff has adequately established a principal loss of $1,692,982 as a result of Quest's breach of the Brokerage Agreement. Pursuant to Cal. Civ. Code § 3287, Plaintiff is also entitled to prejudgment interest. Plaintiff accordingly requests that prejudgment interest be charged in the amount of $428,894.84. The requested total of prejudgment interest reflects an interest rate of 10% per annum, which is the default rate

8

under Cal. Civ. Code § 3289. Plaintiff's damages request shall be GRANTED.

### E. Attorneys Fees and Costs

Lastly, Plaintiff requests an award of attorneys fees and costs. Local Rule 55-3 establishes a schedule of attorney fees for default judgment where "a promissory, note, contract or applicable statute provides for the recovery of reasonable attorneys fees." Plaintiff implies that the Brokerage Agreement provides for the recovery of attorneys fees. However, Plaintiff does not point the Court to any specific provision of the Brokerage Agreement that states as much. Plaintiff has therefore failed to show that it is entitled to attorneys fees. Plaintiff's attorneys fee request is DENIED.

## IV. DISPOSITION

In light of the above, the Court GRANTS Plaintiff's Motion for Default Judgment with respect to Plaintiff's claims for breach of contract and professional negligence and Quest, Dichoso and Anabo. The Court DENIES Plaintiff's Motion for Default Judgment with respect to Plaintiff's claims of negligent misrepresentation and fraud. This denial is without prejudice to Plaintiff's ability to file an amended complaint for these claims. Any amended complaint must be filed no later than July 5, 2011.

The Court awards damages in the amount of $1,692,982 and prejudgment interest in the amount of $428,894.84.

IT IS SO ORDERED.
DATED: June 27, 2011

_____
DAVID O. CARTER
United States District Judge